**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

In re:                                    )
                                          )
DALMATIAN FIRE EQUIPMENT, INC.,           )      Case No. 18-18332 MER
                                          )
            Debtor.                       )      Chapter 11
                                          )

---

**DALMATIAN FIRE EQUIPMENT'S PLAN OF REORGANIZATION**

---

DALMATIAN FIRE EQUIPMENT, INC., debtor-in-possession, by and through its undersigned counsel, proposes Dalmatian Fire Equipment's Plan of Reorganization (the "Plan") pursuant to Section 1121(a) of the Bankruptcy Code.

**ARTICLE I
DEFINITIONS**

Unless otherwise provided in this Plan, all terms used herein that are defined or used in the Bankruptcy Code are intended to be used in this Plan as defined or used in the Bankruptcy Code. The following capitalized terms shall have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms.

"Administrative Claim" shall mean (i) a Claim for a cost or expense of administration of the Chapter 11 Case as contemplated in Section 503(b) of the Bankruptcy Code and entitled to priority pursuant to Section 507(a)(2) of the Bankruptcy Code; and (ii) all fees due under 28 U.S.C. § 1930.  Any Administrative Claims must be submitted to the Bankruptcy Court within sixty (60) days after the Effective Date or they will be disallowed.

"Allowed" when used with respect to a Claim other than an Administrative Claim, shall mean a Claim (i) to the extent it is not a Contested Claim; or (ii) a Contested Claim, proof of which was filed with the Bankruptcy Court on or before any applicable Bar Date, and (x) as to which no objection has been filed by the Objection Date, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court; or (y) as to which an objection was filed by the Objection Date, to the extent allowed by a Final Order.  "Allowed" when used with respect to a Claim that is an Administrative Claim, shall mean an Administrative Claim that has been allowed pursuant to Article V of the Plan.

"Bankruptcy Code" shall mean Title 11 of the United States Code.

"Bankruptcy Court" shall mean the Bankruptcy Court unit of the United States District Court for the District of Colorado.

"Bar Date" shall mean May 27, 2019, the last date set by the Bankruptcy Court for filing Claims that are not Administrative Claims.

"Chapter 11 Case" shall mean the case commenced under Chapter 11 of the Bankruptcy Code for the Debtor.

"Claim" shall mean a claim, as defined in Section 101(5) of the Bankruptcy Code, against the Debtor.

"Confirmation" shall mean the entry by the Bankruptcy Court of an order confirming the Plan in accordance with Chapter 11 of the Bankruptcy Code; "Confirmation Order" shall mean such order; and "Confirmation Date" shall mean the date on which such order is entered.

"Contested" when used with respect to a Claim as to which a proof of claim has been timely filed with the Bankruptcy Court, shall mean a Claim that has not been Allowed: (i) that is listed in any of Debtor's schedules of liabilities as disputed, unliquidated, or contingent; (ii) to the extent the proof of claim exceeds the scheduled amount;  (iii) that is not listed in any such schedules or is listed with an unknown value; or, (iv) as to which an objection has been filed and as to which no Final Order allowing such Claim has been entered.

"Debtor" shall mean Dalmatian Fire Equipment, Inc.

"Disclosure Statement" shall mean the disclosure document describing the Plan as required to be filed by the Debtor, approved by the Court, and distributed to the various classes of Claims under the Plan as provided in Section 1125 of the Bankruptcy Code.

"Distribution Date" when used with respect to an Allowed Administrative or Priority Claim, shall mean as soon as practicable after the later of (i) the Effective Date, or (ii) if the Administrative or Priority Claim is Allowed after the Effective Date, the fifth day of the next calendar month after the date upon which such Claim is Allowed.

"Effective Date" shall mean the first business day after the passage of thirty (30) days from the date the Confirmation Order becomes a Final Order.

"Equity Interest" shall mean the respective membership interests, if any, in the Debtor.

"Fee Claim" shall mean a Claim under Section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

"Final Order" shall mean an order or judgment of the Bankruptcy Court or other court of competent jurisdiction which has not been reversed, stayed, modified, or amended and as to which (i) the time to appeal or seek review, rehearing, or certiorari has expired (without regard to whether the time to seek relief of a judgment under Rule 60(b) of the Federal Rules of Civil Procedure has expired); and (ii) no appeal or petition for review, rehearing, or certiorari is pending, or if pending as to which no bond or other stay has been issued, or as to which any right to appeal or seek review, rehearing, or certiorari has been waived.

"Impaired" A class of claims or interests is "impaired" in accordance with 11 U.S.C. §

1124 if the Plan alters the legal, equitable and/or contractual rights of the holders of such claims or interests.

"Insider" shall mean any Person defined in Section 101(31)(B) of the Bankruptcy Code.

"Late Filed Claims" shall mean any claim filed in the Chapter 11 Case after the Bar Date.

"Litigation" shall mean any civil action pending on the Confirmation Date or commenced thereafter by the Reorganized Debtor, including any preference or avoidance actions under the Bankruptcy Code, any state and federal court proceedings, and any matters submitted to binding arbitration.

"Objection Date" shall mean, with respect to a Claim other than a Claim that is an Administrative Claim, the first business day following the passage of sixty (60) days from the Effective Date.

"Person" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, cooperative, limited liability company, governmental entity or political subdivision thereof, or any other legally recognized entity.

"Plan" shall mean this Plan of Reorganization for the Debtor, as amended from time to time.

"Plan Proponent" shall mean the Debtor.

"Post-petition" shall mean anytime on or subsequent to September 24, 2018 and prior to the Confirmation Date.

"Pre-petition" shall mean any time prior to September 24, 2018.

"Priority Claim" shall mean a Claim entitled to priority in payment pursuant to Section 507(a)(4) or 507(a)(5) of the Bankruptcy Code.

"Pro Rata" shall mean with respect to any Person entitled to distribution, the percentage which such Person's Allowed Claim bears to the sum of all Allowed Claims in the same class.

"Reorganized Debtor" shall mean the reorganized Debtor under the confirmed Plan.

"Secured Claim" shall mean any Claim secured by a valid and enforceable lien against the property of the Debtor, but only to the extent of the value of the collateral securing such Claim.

"Tax Claim" shall mean any Claim of a governmental unit for taxes entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"Unsecured Claim" shall mean a Claim that is not secured by a valid and enforceable lien against the property of the Debtor, other than Administrative Claims, Priority Claims, and Equity Interests.

"Unimpaired" A class of claims or interests is "unimpaired" in accordance with 11 U.S.C. § 1124 if the legal, equitable and/or contractual rights of the holders of such claims or interests are not altered under the Plan.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following is a designation of all classes of Claims and Equity Interests other than those Claims of a kind specified in Sections 507(a)(2), 507(a)(3), or 507(a)(8) of the Bankruptcy Code.

| Class 1 | Allowed Unimpaired Unsecured Claim of ANB Bank |
| Class 2 | Priority Wage Claims |
| Class 3 | Executory Contracts and Unexpired Leases |
| Class 4 | General Unsecured Claims |
| Class 5 | Equity Interests |
| Class 6 | Late Filed Claims |
| Class 7 | Hexagon Digital Wave, LLC |

## ARTICLE III
## TREATMENT OF UNCLASSIFIED PRIORITY CLAIMS

As provided in Section 1123(a)(1) of the Bankruptcy Code, the Claims against the Debtor covered in this Article III are not classified. The holders of such Claims are not entitled to vote on the Plan.

3.1     *Allowed Administrative Claims.*

The holders of Allowed Administrative Claims of the type specified in Section 507(a)(2) of the Bankruptcy Code shall receive cash equal to the allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such Claims shall be paid in full on the Effective Date or treated as otherwise agreed to by the holders of such Claims. The payment of professionals is subject to Court approval.

3.2     *Allowed Unsecured Tax Claims.*

During the pendency of this bankruptcy case, the Debtor sought and obtained Court approval to enter into and pay any amounts negotiated under voluntary disclosure agreements with several state and local taxing authorities. See docket nos. 149 and 164. The terms of any such agreements are incorporated herein by this reference. As set forth in more detail in Section 7.1 below, the Debtor shall not be liable to pay any pre-petition taxes, claims, penalties, or interest allegedly due to any state or local taxing authority that did not timely file a proof of claim in this bankruptcy case.

The Debtor believes that the only Section 507(a)(8) Claim is held by the Colorado Department of Revenue for sale taxes owed in the amount of $900.00. The Debtor shall pay 100% of the Section 507(a)(8) Claim on the Effective Date. Claims for penalties not related to actual pecuniary loss shall be treated under Class 4.

3.3     *Fees Due Under 28 U.S.C. § 1930(a)(6).*

The Reorganized Debtor shall make all payments required to be made to the U.S. Trustee program pursuant to 28 U.S.C. § 1930(a)(6) until the Chapter 11 Case is closed, converted, or dismissed. All payments due to the U.S. Trustee program pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the U.S. Trustee shall thereafter be paid fees due on a quarterly basis until the Chapter 11 Case is closed, converted, or dismissed. The Debtor will also timely file all required post-confirmation reports.

## ARTICLE IV
## IDENTIFICATION OF UNIMPAIRED AND IMPAIRED CLASSES

Classes 2,4, and 7 are impaired under the Plan.

## ARTICLE V
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

Class 1. (*Allowed Unimpaired Unsecured Claim of ANB Bank*). The Debtor entered into a Guaranty (Continuing Debt – Unlimited) (the "Guaranty") with ANB Bank on February 2, 2017. Under the Guaranty, the Debtor guaranteed payment and performance under a separate loan agreement between ANB Bank and an affiliated corporate entity, 75 Oak Ave., LLC. Although Claim 4-1 filed by ANB Bank on December 28, 2018 lists ANB Bank's claim as a Secured Claim, ANB Bank's claim is not actually secured by any property owned by the Debtor and is therefore an Unsecured Claim. Upon information and belief, ANB Bank will soon file an amended claim to acknowledge that its claim is unsecured. As of the Petition Date, the amount due under the loan guaranteed by the Debtor was $1,510,237.06. The underlying loan is not in default and is fully secured by real estate owned by 75 Oak Ave., LLC. Under this Plan, the Guaranty shall not be modified, shall remain in effect, and the Debtor's obligations under the same remain unchanged.

Class 2. (*Priority Wage Claims Under 11 U.S.C. § 507(a)(4)*). Any creditors holding priority wage Claims under 11 U.S.C. § 507(a)(4) shall receive cash on the Effective Date equal to the allowed amount of such Claim(s). The only priority wage claim is that of Erin Livingstone in the amount of $937.50.

Class 3. (Executory Contracts and Unexpired Leases). Any unexpired leases or executory contracts not otherwise dealt with in the Plan shall be deemed rejected. Under the terms of any lease agreements, in the event that a lease is rejected, the equipment or property will be returned to the lessor, unless Debtor and the lessor otherwise agree.

Any Class 3 claimant asserting a claim for damages arising from rejection of an executory contract or unexpired lease shall file a proof of claim with the Bankruptcy Court by the later of the Effective Date or thirty days after entry of the Order granting the motion to reject or the claim shall be forever barred. The claims held by holders of rejected leases or executory contracts shall be

treated as Class 4 Unsecured Claims subject to the limitations of Section 502 of the Bankruptcy Code.

On or about March 17, 2017, the Debtor (as lessee), King Buick GMC (as lessor), and ACAR Leasing, Ltd. (as assignor of the lessor) entered into a motor vehicle lease (the "Motor Vehicle Lease"). Pursuant to the Motor Vehicle Lease, the Debtor pays monthly for the use of a 2017 GMC Sierra pick-up truck (the "Truck"). Pursuant to 11 U.S.C. § 365, the Debtor may assume or reject executory contracts and unexpired leases as part of a chapter 11 plan.[1] The question of whether to assume or reject an unexpired lease is one of business judgment of the debtor. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d. 1303, 1309 (5th Cir. 1985); *In re Lady Baltimore Foods, Inc.*, 2004 WL 2192374, *2 (Bankr. D. Kan. August 13, 2004); *In re the Beare Co.*, 177 B.R. 879, 882 (Bankr. W.D. Tenn. 1994). With regard to assumption or rejection, a presumption of reasonableness attaches to the debtor's management decisions. *Lady Baltimore*, 2192734 at * 5. The debtor need only demonstrate that the assumption of a lease will benefit the estate. *Id*. at *6; *Beare Co.*, 177 B.R. at 882. In the exercise of the Debtor's sound business judgment, the Debtor has determined that the Motor Vehicle Lease is a benefit to the estate and that continued use of the Truck and the option to purchase the Truck at the end of the Motor Vehicle Lease will be beneficial to the Debtor's business operations. The Debtor anticipates paying its creditors in full through this Plan. Thus, rejection of the Motor Vehicle Lease would only lead to a claim for damages that the Debtor would be obligated to pay. The Debtor is current on all of its obligations under the Motor Vehicle Lease. Accordingly, no amounts are due pursuant to 11 U.S.C. § 365 to cure any defaults as a condition precedent to the assumption of the Motor Vehicle Lease. The Debtor hereby assumes the Motor Vehicle Lease. In the alternative, the Debtor and King Buick GMC and/or ACAR Leasing, Ltd. may terminate the Motor Vehicle Lease on such terms as are agreed upon by both parties subject to the monetary amount limits of Section 7.6 below.

The Debtor is a party to pre-petition real estate leases with affiliated entities 14 Oak, LLC and 75 Oak Ave., LLC. The Debtor was not in default of any payment obligations under the real property leases on the Petition Date and has remained in compliance with the same throughout this bankruptcy proceeding. The lease with 14 Oak, LLC expired at the end of May, 2019 and all of the Debtor's operations are now located at 75 Oak Avenue. The Debtor's prepetition lease with 75 Oak Ave., LLC was amended on January 15, 2019. The Debtor is current on all of its obligations under the lease. Accordingly, no amounts are due pursuant to 11 U.S.C. § 365 to cure any defaults as a condition precedent to assumption. In the exercise of the Debtor's sound business judgment, the Debtor has determined that the lease with 75 Oak Ave., LLC is a benefit to the estate. The Debtor hereby assumes its lease with 75 Oak Ave., LLC through this Plan and 75 Oak Ave., LLC has informed the Debtor that it stipulates and agrees to assumption.

On the Petition Date, the Debtor was a party to a Client Services Agreement (the "CSA") with CoAdvantage, a professional services organization. Under the CSA, the Debtor outsources employee management tasks, such as employee benefits, payroll, worker's compensation, and payroll taxes. The Debtor was not in default of its obligations under the CSA on the Petition Date. Nevertheless, in order to ensure that its interests were adequately protected, CoAdvantage required

---

1. "An assumption or rejection may also be accomplished as part of a Chapter 11 plan, obviating the need to file a separate motion as a contested matter." *In re Nat'l Gypsum Co.*, 208 F.3d 498, 511–12 (5th Cir.2000); 11 U.S.C. § 1123(b)(2)." *In re Amerivision Commc'ns, Inc.*, 349 B.R. 718, 722 (B.A.P. 10th Cir. 2006).

that the Debtor provide a $75,000.00 deposit (the "CoAdvantage Deposit") with CoAdvantage to be used to fund the Debtor's employee management obligations in the event of a default by the Debtor.  On September 27, 2018, the Debtor filed a motion to authorize the Debtor to provide the CoAdvantage Deposit as adequate protection to be refunded upon confirmation of the Debtor's Plan (docket no. 14).  The Court granted the Debtor's motion on October 4, 2018 (docket no. 27) and the Debtor made the CoAdvantage Deposit.  The Debtor is current on all of its obligations under the CSA.  Accordingly, no amounts are due pursuant to 11 U.S.C. § 365 to cure any defaults as a condition precedent to assumption.  In the exercise of the Debtor's sound business judgment, the Debtor has determined that the CSA is a benefit to the estate and should be assumed.  The Debtor hereby assumes the CSA and CoAdvantage shall refund the CoAdvantage Deposit no later than 21 days after the Confirmation Date.

Class 4.  (*Impaired and Unimpaired Unsecured Claims*).  Class 4 is comprised of creditors with or asserting Unsecured Claims against the Debtor, including any allowed penalty Claims held by any taxing authority which are not related to actual pecuniary loss.  Allowed Class 4 Claims shall be paid: (a) according to the original terms of the pre-petition agreement with such creditor; (b) as otherwise agreed by the creditor; or (c) on the Effective Date, in full, final, and complete satisfaction of their Unsecured Claims, as set forth in the chart below.  Distributions to Class 4 claimants shall not exceed the amount of the Allowed Unsecured Claims plus interest calculated pursuant to the terms of any pre-petition agreements or if no interest rate is included, two and a half percent (2.5%) per annum. The Class 4 creditors who have timely filed Unsecured Claims or were listed as creditors are as follows:

| Name of Claimant | Amount of the Proof of Claim or Schedule F | Amount Owed Pursuant to Debtor's Records | Description | Status | Treatment |
|---|---|---|---|---|---|
| Waas Campbell Rivera Johnson & Velasquez, LLP | $4,900.00 | $4,400.00 | Legal Services / Claim 3-1 | Disputed | If Allowed – paid on the Effective Date or when Allowed |
| Fire Protection Equipment Co. | $1,113.00 | $778.00 | Goods Sold / Claim 5-1 | Disputed | If Allowed – paid on the Effective Date or when Allowed |
| Hudson Fire Protection District | $1,930.00 | $0.00 | Goods Sold / Claim 6-1 | Disputed | If Allowed – Paid on the Effective Date or when |

| | | | | | Allowed |
|---|---|---|---|---|---|
| John W. Abel | $7,382.50 | $0.00 | Goods Sold / Claim 7-1 | Disputed | If Allowed – Paid on the Effective Date or when Allowed |
| Wilderness Volunteer Fire Department, Inc. | $187.50 | $0.00 | Goods Sold / Claim 8-1 | Disputed | If Allowed – Paid on the Effective Date or when Allowed |
| Illinois Union Insurance Company | $7,616.00 | $0.00 | Insurance Premium / Claim 12-1 | Disputed | If Allowed – Paid on the Effective Date or when Allowed |
| State of Maine, Maine State Prison | $3,865.00 | $0.00 | Goods Sold and Warranty / Claim 9-1 | Disputed | If Allowed - paid on the Effective Date or when Allowed |
| Digital Wave Corporation | $38,725.00 | $36,525.00 | Services Performed / Claim 10-1 | Disputed | If Allowed – paid on the Effective Date or when Allowed |
| Carole R. Simmons | $686,032.65 | $682,798.43 | Loan / Schedule F | Allowed | Paid according to terms of original pre-petition agreement |
| Chalybeate Fire and Rescue | $4,365.00 | $4,365.00 | Goods Sold / Schedule F | Allowed | Paid on Effective Date |
| Chase Ink Card | $6,974.65 | $0.00 | Loan / Schedule F | Disputed | If Allowed – Paid on the Effective Date or when |

| | | | | | Allowed |
|---|---|---|---|---|---|
| Custom Coatings, LLC | $975.00 | $975.00 | Goods Sold / Schedule F | Allowed | Paid on Effective Date |
| Daniel Simmons | $42,917.10 | $42,917.10 | Loan / Schedule F | Allowed | Paid according to terms of original pre-petition agreement |
| David Simmons | $42,917.10 | $42,917.10 | Loan / Schedule F | Allowed | Paid according to terms of original pre-petition agreement |
| Elan Card | $12,293.53 | $0.00 | Loan / Schedule F | Disputed | If Allowed – Paid on the Effective Date or when Allowed |
| Fire Trader | $1,100.00 | $1,100.00 | Services Performed / Schedule F | Allowed | Paid on Effective Date |
| First Insurance Funding Corp. | $4,365.26 | $0.00 | Services Performed / Schedule F | Disputed | If Allowed – Paid on the Effective Date or when Allowed |
| Gallegos Sanitation, Inc. | $319.66 | $0.00 | Services Performed / Schedule F | Disputed | If Allowed – Paid on the Effective Date or when Allowed |
| Jefferson-Como Fire Department | $1,729.50 | $1,729.50 | Services Performed / Schedule F | Allowed | Paid on Effective Date |

| | | | | | |
|---|---|---|---|---|---|
| Kevin L. Simmons | $111,184.23 | $111,184.23 | Loan / Schedule F | Allowed | Paid according to terms of original pre-petition agreement |
| North St. Paul Fire Department | $2,500.50 | $2,500.50 | Goods Sold / Schedule F | Allowed | Paid on Effective Date |
| Russell Kates | $12,609.79 | $12,609.79 | Loan / Schedule F | Allowed | Paid according to terms of original pre-petition agreement |
| The Fire Store | $4,779.50 | $4,779.50 | Goods Sold / Schedule F | Allowed | Paid on Effective Date |
| UE Compression | $356.80 | $356.80 | Goods Sold / Schedule F | Allowed | Paid on Effective Date |
| Unishippers | $3,811.99 | $0.00 | Services Performed / Schedule F | Disputed | If Allowed – Paid on the Effective Date or when Allowed |

The Debtor may file motions to disallow any Unsecured Claims listed as "Disputed" and shall treat such claims in accordance with the Bankruptcy Court's ruling on such motions and subject to the provisions of this Plan.

Class 5. (*Equity Interests*). On the Effective Date, the shareholders of the Debtor shall retain their Equity Interests. The "Absolute Priority Rule" of 11 U.S.C. § 1129(b) is not applicable where, as is expected here, the class of unsecured creditors has accepted the Plan. "[I]f a class of creditors accepts the plan under section 1129(a)(8), the bankruptcy court may confirm the plan without showing that the plan satisfies the 'unfair discrimination' and 'fair and equitable' standards of section 1129(b)." *In re Ruti-Sweetwater, Inc.*, 836 F.3d 1263 (10th Cir. 1988).

Class 6. (*Late Filed Claims*). Class 6 is comprised of all Late Filed Claims against Debtor. The Class 6 claims shall be disallowed and shall receive no distribution under the Plan.

Class 7 (*Hexagon Digital Wave, LLC*).  On the Petition Date, the Debtor was a party to a supply agreement (the "Supply Agreement") with Hexagon Digital Wave, LLC ("Digital Wave") dated June 1, 2017 and amended on December 21, 2018.  Under the Supply Agreement, Debtor acts as a reseller of used SCBA equipment that Digital Wave refurbishes.  Because there is no requirement of future performance by the Debtor under the Supply Agreement, the Agreement is not an executory contract requiring assumption or rejection.

Until recently, Digital Wave's refurbished equipment was certified under a special permit from the Department of Transportation ("DOT").  In 2019, DOT terminated the special permit.  As a result, used equipment sold pursuant to the Supply Agreement is no longer certified by a federal regulatory agency.  Digital Wave represents to the Debtor that it is challenging the permit termination through appropriate federal administrative processes and hopes to have the permit reinstated.  However, unless and until the permit is reinstated, the Debtor is saddled with unsellable inventory and the prospect of customer complaints relating to the equipment sold prior to the permit termination.  In addition, Digital Waves asserts both pre-petition general unsecured and post-petition administrative claims against the Debtor relating to unpaid invoices for product delivered to the Debtor to the Supply Agreement.  The Debtor asserts that unless the DOT permit is reinstated, the product has no value.  The Debtor therefore reserves the right to object to the claims asserted by Digital Wave.  In the event any general unsecured claim is allowed, such claim will be treated as a Class 4 claim and paid as provided in the treatment of Class 4.  In the event any Administrative Claim is allowed, the Claim will be paid on the fifth day of the next calendar month after the date upon which such Claim is Allowed

The Debtor also reserves the right to bring claims against Digital Wave under the Supply Agreement arising out of the sale of product that is no longer subject to the DOT special permit.

## ARTICLE VI
## DEFAULT AND PLAN MODIFICATION

6.1    *Default and Right to Cure.*

In the event of any default by the Reorganized Debtor of any payment to any class of claimants arising under the terms of the Plan, the Reorganized Debtor shall have thirty (30) days within which to cure any default in payments due under this Plan after the date of issuance of written notice from any claim holder. Written notice shall be provided to the Reorganized Debtor and to Debtor's counsel as provided in paragraph 12.7 herein, unless written notice of substitution of legal counsel is served upon the claim holder at least fifteen (15) days prior to the date notice is sent.

6.2    *Failure to Cure Default.*

In the event that the Reorganized Debtor fails to cure any default in the requirements to make payment under the Plan, within thirty (30) days from the date that written notice is sent in compliance with paragraph 6.1, the Reorganized Debtor shall be in default under the terms of the Plan.

6.3     *Plan Modification.*

At any time after Confirmation of the Plan but before the completion of payments under the Plan, the Plan may be modified upon the request of the Reorganized Debtor, after notice and a hearing, to the extent allowed by 11 U.S.C. § 1127.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION AND
## EXECUTION OF THE PLAN

7.1     *Asset Transfer to Reorganized Debtor.*

On or about the Effective Date, all assets of the Debtor shall be transferred to the Reorganized Debtor free and clear of all liens, claims, and interests of creditors, equity holders, and other parties in interest, except as otherwise provided herein.  The Reorganized Debtor shall not, except as otherwise provided in this Plan, be liable to repay any debts which accrued prior to the Confirmation Date, including any debts or potential liabilities listed in the Debtor's bankruptcy filing or schedules as contingent, unliquidated, disputed, or with an unknown amount.  Except as provided in this Plan, on the Confirmation Date, the Debtor shall be granted a discharge under 11 U.S.C. § 1141.

Soon after the Petition Date, the Debtor sought and obtained Court authority to provide a $75,000.00 deposit to CoAdvantage.  Within 21 days after the Confirmation Date, the $75,000.00 deposit shall be returned by CoAdvantage to the Reorganized Debtor.  Any other deposits paid by the Debtor in connection with this bankruptcy proceeding shall be returned to the Reorganized Debtor within 21 days after the Confirmation Date.

Except as set forth in any voluntary disclosure agreements, the Reorganized Debtor shall not be liable to repay any pre-petition amounts allegedly owed to any taxing authorities listed on the Debtor's Amended Schedule E/F: Creditors Who Have Unsecured Claims ("Amended Schedule E") filed on February 26, 2019 at docket no. 136.  On February 26, 2019, the Debtor amended its Schedule E to include the names and addresses of several taxing authorities who may assert Claims against the Debtor for unpaid sales, franchise, and other corporate taxes.  Such claims were listed as "unknown."  On February 26, 2019, complete copies of Amended Schedule E, the Notice of Amendment to Schedule, and the Notice of Meeting of Creditors were mailed to the addresses listed in Amended Schedule E (docket no. 137).  Notice of the Bar Date was also published once in the national edition of the Wall Street Journal.  On February 26, 2019, the Debtor served a copy of the Notice of Order Establishing Procedures and Bar Date for the Filing of Proofs of Claim Pursuant to Fed. R. Bankr. P. 3003(c)(3), Corrected Order Establishing Bar Date for the Filing of Proofs of Claim Pursuant to Fed.R.Bankr.P. 3003(c)(3) (Docket No. 128); and Official Form B410: Proof of Claim on all creditors included in Amended Schedule E (docket no. 153).  None of the taxing authorities added to the Amended Schedule E filed claims even though they received notice.  Pursuant to Fed.R.Bankr.P. 3003(c)(2), only creditors who are not schedule or who are listed as holding  disputed, contingent, or unliquidated claim must file a claim in order to share in distributions and be entitled to vote to accept or reject a plan.  Although "unknown" is not synonymous with "disputed, contingent, or unliquidated," it is obvious that the statutory

evidentiary presumption as to the validity and amount of a claim cannot apply to a claim scheduled as "unknown." *In re Sabbun*, 556 B.R. 383, 388 (Bankr. C.D. Ill. 2016).

7.2 *Means for Implementation*.

The Debtor shall fund its Plan obligations with cash from operations, a debtor-in-possession loan previously approved by the Bankruptcy Court, and future cash infusions from equity interest holders, if necessary. The Debtor shall have no obligation to obtain court approval for future loans or capital contributions. Such funds shall be sufficient to pay in full all amounts due on the Effective Date, and, as applicable, priority claimants treated under Article III herein.

7.3 *Execution of Plan*.

On the Effective Date, the Reorganized Debtor shall implement its Plan of Reorganization pursuant to the terms for each class of claimants set forth above. Payments under the Plan shall come from the cash flow of the Reorganized Debtor generated by the Reorganized Debtor's business, from a previously approved debtor-in-possession loan, and capital contributions or loans. Payments to creditors holding Contested Claims as provided in Article X herein shall be held in escrow.

The lawsuit brought by Rutledge and Davis, PLLC against the Debtor and currently pending in the United States District Court for the Northern District of Mississippi, cause number 3:18CV000114-MPM-RP (the "Mississippi Lawsuit") shall be dismissed, with prejudice, within 21 days after the Confirmation Date.

7.4 *Avoidance and Recovery Actions*.

The Reorganized Debtor may pursue any claims or recovery actions held by the Debtor, including but not limited to recovery under 11 U.S.C. §§ 544, 547, 548 and 549. The Reorganized Debtor may abandon any claim it has against any third party if it determines that the claim is burdensome or of inconsequential value and benefit. The Reorganized Debtor is authorized to employ counsel to represent it in litigation or any cause of action or claims held by the Debtor. The Debtor does not believe that any such claims exist.

7.5 *Deposit Accounts*.

All funds held by the Reorganized Debtor for distribution under the Plan shall be held in accounts which meet the insurance and guaranty requirements 11 U.S.C. § 345(b).

7.6 *Claims Objections*.

Following the Effective Date, the Reorganized Debtor may compromise objections to Claims or causes of action referred to in this Plan without notice and hearing for claims or causes of action asserted in the original amount of $50,000.00 or less. Settlements or compromises of any claims or causes of action asserted in the amount of $50,000.00 or more shall be subject to notice and an opportunity for hearing under the provisions after notice in compliance with the Federal and Local Rules of Bankruptcy Procedure.

7.7     *Continued Operations*.

After the Effective Date, the Reorganized Debtor exercising its business judgment may sell, operate or abandon any of its assets.

7.8     *Discharge and Injunctive Relief*.

The Reorganized Debtor shall receive a discharge to the extent permitted by 11 U.S.C. § 1141 and the Reorganized Debtor shall be entitled to seek injunctive relief from the Court, if necessary, to enforce any and all provisions of the Plan.

## ARTICLE VIII
## EFFECT OF CONFIRMATION

Upon Confirmation, the provisions of this Plan shall bind the Debtor and any creditor or equity security holder of the Debtor, whether or not the Claim or Equity Interest of such Person is impaired under this Plan and whether or not such Person has accepted this Plan.   Upon Confirmation, all of the property of the Debtor's estates shall be vested in the Reorganized Debtor as provided in this Plan, free and clear of all Claims and Equity Interests, except as specifically provided in this Plan.   Upon Confirmation, all creditors and equity security holders of the Debtor are permanently enjoined from commencing or pursuing any action against the Reorganized Debtor, other than an action to enforce the provisions of this Plan.

## ARTICLE IX
## PROVISION FOR ASSUMPTION OR
## REJECTION OF EXECUTORY CONTRACTS

All unexpired leases and executory contracts between the Debtor and any other Person (if any) which have not prior to the Effective Date of the Plan been affirmatively assumed by the Debtor, are hereby rejected.

## ARTICLE X
## PROVISION AS TO DISPUTED CLAIMS

10.1     *Objections*.

The Reorganized Debtor may, at any time within ninety (90) days after the Effective Date, file an objection to any claim which in its opinion should be objected to as improper, in whole or in part.

Upon the filing of such objection or service of said written notice, such claim shall be considered a Contested Claim, and any cash or other instruments or property otherwise distributable to such creditor under this Plan shall be held by the Reorganized Debtor in escrow until final disposition of the objection to the claim either by settlement or entry of a Final Order. If the claim is only contested in part, payment shall be made to the claimant on the uncontested portion under the provisions of Article V and the balance shall be treated as a Contested Claim under the provisions of Article X.  If the objection is overruled or denied, in whole or in part, or the claim is allowed by stipulation of the Reorganized Debtor and the claimant, such claimant shall

receive the amount of cash provided in this Plan to the extent of the amount of the claim finally allowed, including back installments.

      10.2    *Contested Claims Escrow.*

From and after the Effective Date, the Reorganized Debtor shall reserve and hold for the benefit of each holder of a Contested Claim cash in an amount equal to the payments which would have been made to the holder of such Contested Claim if it were an Allowed Claim in an amount equal to the lesser of:  (i) the amount of the Contested Claim or (ii) the amount in which the Contested Claim shall be estimated by the Bankruptcy Court pursuant to § 502 of the Bankruptcy Code for purposes of allowance, which amount shall constitute and represent the maximum amount in which such claim may ultimately become an Allowed Claim.  No payments or distributions shall be made with respect to all or any portion of any Contested Claim pending the entire resolution thereof by Final Order.

## ARTICLE XI
## AMENDMENT OF ARTICLES OF INCORPORATION AND BYLAWS OF DEBTOR

As may be required, the Articles and Bylaws of the Debtor shall be amended on or before the Effective Date to the extent necessary to effectuate the provisions of the Plan.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

      12.1    *Retention of Jurisdiction.*

The Reorganized Debtor reserves the right to reopen the Chapter 11 Case after Confirmation and dismissal for the purposes set forth in this paragraph.  The Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

    (a)    To hear and determine any and all objections to the allowance of Claims or Interests.

    (b)    To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan, to the extent such claim was incurred prior to the Effective Date.

    (c)    To hear and determine any and all pending applications for the rejection or assumption, or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party, and to hear and determine any and all Claims arising therefrom.

    (d)    To hear and determine any and all applications, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date or instituted by the Reorganized Debtor thereafter.

(e)     To consider any modifications of the Plan, to remedy any defect or omission, or reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court, including the Confirmation Order.

(f)     To hear and determine any application to sell the Debtor's property free and clear of liens.

(g)     To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan.

(h)     To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor where the original claim or cause of action is in excess of $50,000.00.

(i)     To issue orders in aid of execution of the Plan as contemplated by Section 1142 of the Bankruptcy Code.

(j)     To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order.

12.2    *Vesting of Property*.

The Reorganized Debtor shall be vested with ownership to all property of the estate upon the Effective Date.

12.3    *Satisfaction of Claims*.

The payments made hereunder shall be in exchange for all Claims against the Debtor and shall constitute full settlement, release, discharge, and satisfaction of all such claims against the Debtor.  Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan.  Any obligation or note, previously in default, so modified, shall be cured as modified as of the Confirmation Date.  This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

12.4    *Pre-Existing Causes of Action*.

Nothing contained herein shall prevent the Reorganized Debtor from taking any action as may be necessary to the enforcement of any cause of action which may exist on behalf of the Reorganized Debtor and which may not have been enforced or prosecuted by the Debtor prior to the Effective Date.  In accordance with Bankruptcy Code section 1123(b)(3), the Reorganized Debtor shall retain all pre-petition causes of action, a nonexclusive description of which is set forth below, and other similar claims, counterclaims, rights, defenses, setoffs, recoupments, and actions in law or equity arising under the Bankruptcy Code or applicable non-bankruptcy law.  The term "causes of action," shall include, but is not limited to, any and all claims, demands, rights, actions, causes of action and suits of the Debtor, Reorganized Debtor, and/or bankruptcy estate of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured,

whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to (1) rights of setoff, counterclaim or recoupment; (2) the right to object to claims or interests; (3) claims pursuant to Section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, breach of contract, unjust enrichment, tortious interference; (5) all avoidance actions; (6) claims for tax refunds; (7) any and all defenses to tax claims; (8) claims pursuant to Section 506 of the Bankruptcy Code; and (9) any other claims or defenses which may be asserted against third parties or insiders. Such causes of action, include, but are not limited to, any breach of contract claims, tort claims, abuse of process claims, malicious prosecution claims, refund claims, indemnity claims, warranty claims, setoffs, or defenses against (1) Hexagon Digital Wave, LLC; (2) any state or local taxing authority; (3) Rutledge and Davis, PLLC; and (4) Safety Source, Inc..

12.5   *Reservation of Rights*.

The Reorganized Debtor reserves the right to modify the Plan prior to the Confirmation, and thereafter to modify the Plan in accordance with 11 U.S.C. § 1127(b) and paragraph 6.3 herein.

12.6   *Headings*.

The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan.

12.7   *Notices*.

All notices, request, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified. All communications will be deemed delivered when received at the following addresses:

(a) To Debtor:

Dalmatian Fire Equipment, Inc.
75 Oak Ave.
Eaton, CO 80615
kevin.simmons@dalmatianfire.com

With a copy to:

David V. Wadsworth
David J. Warner
Wadsworth Garber Warner Conrardy, P.C.
2580 W. Main St., Ste. 200
Littleton, CO 80120
dwarner@wgwc-law.com
dwadsworth@wgwc-law.com

(b)     To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, or, if no Proof of Claim is filed, at the address set forth for the claimant in the Debtor's schedules filed with the Bankruptcy Court.

12.8    *Successors and Assigns.*

The Plan will be binding upon the Reorganized Debtor, any creditor affected by the Plan and their heirs, successors, assigns and legal representatives.

12.9    *Unclaimed Payments.*

If an individual or entity that is entitled to receive a payment or distribution pursuant to this Plan fails to negotiate a check, accept a distribution, or provide a forwarding address, the person or entity is deemed to have released and abandoned any right to payment or distribution under the Plan.

DATED July 23, 2019.

DALMATIAN FIRE EQUIPMENT, INC.

By: Kevin Simmons
Its: Chief Executive Officer


WADSWORTH GARBER WARNER CONRARDY, P.C.

/s/David J. Warner

David V. Wadsworth, #32066
David J. Warner, #38708
2580 W. Main St., Ste. 200
Littleton, CO 80120
(303) 296-1999, Fax: (303) 296-7600
ATTORNEYS FOR DALMATIAN FIRE EQUIPMENT, INC.